1   COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   SHAWN A. WILLIAMS (213113)
    100 Pine Street, Suite 2600
3   San Francisco, CA 94111
    Telephone: 415/288-4545
4   415/288-4534 (fax)
    shawnw@csgrr.com
5        – and –
    SAMUEL. RUDMAN
6   DAVID A. ROSENFELD
    MARIO ALBA JR.
7   58 South Service Road, Suite 200
    Melville, NY  11747
8   Telephone: 631/367-7100
    631/367-1173 (fax)
9   srudman@csgrr.com
    drosenfeld@csgrr.com
10  malba@csgrr.com

11  Attorneys for Plaintiff

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14

| MATERIAL YARD WORKERS LOCAL 1175 BENEFIT FUNDS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. |
|---|---|---|
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| BARE ESCENTUALS, INC., LESLIE A. BLODGETT and MYLES B. MCCORMICK, | ) ) ) ) | |
| Defendants. | ) ) | DEMAND FOR JURY TRIAL |

CV 09 3268

PJH

1    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which

2    included a review of United States Securities and Exchange Commission ("SEC") filings by Bare

3    Escentuals, Inc. ("Bare Escentuals" or the "Company"), as well as regulatory filings and reports,

4    securities analysts' reports and advisories about the Company, press releases and other public

5    statements issued by the Company, and media reports about the Company, and plaintiff believes that

6    substantial additional evidentiary support will exist for the allegations set forth herein after a

7    reasonable opportunity for discovery.

8                                    **NATURE OF THE ACTION**

9         1.      This is a federal securities class action on behalf of purchasers of the common stock

10   of Bare Escentuals between November 7, 2006 and November 26, 2007, inclusive (the "Class

11   Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange

12   Act").

13                                 **JURISDICTION AND VENUE**

14        2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the

15   Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC

16   [17 C.F.R. §240.10b-5].

17        3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

18   §1331 and §27 of the Exchange Act.

19        4.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C.

20   §1391(b).  Many of the acts charged herein, including the preparation and dissemination of

21   materially false and misleading information, occurred in substantial part in this District.

22        5.      In connection with the acts alleged in this complaint, defendants, directly or

23   indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,

24   the mails, interstate telephone communications and the facilities of the national securities markets.

25                                          **PARTIES**

26        6.      Plaintiff Material Yard Workers Local 1175 Benefit Funds, as set forth in the

27   accompanying certification and incorporated by reference herein, purchased the common stock of

28   Bare Escentuals during the Class Period and has been damaged thereby.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          - 1 -

7.     Defendant Bare Escentuals is incorporated in Delaware and maintains its headquarters at 71 Stevenson Street, 22nd Floor, San Francisco, CA 94105. The Company, together with its subsidiaries, engages in the development, marketing, and sale of cosmetics, and skin care and body care products under bareMinerals, RareMinerals, Buxom, and md formulations brands worldwide.

8.     (a)     Defendant Leslie A. Blodgett ("Blodgett") is, and was at all relevant times, Chief Executive Officer of Bare Escentuals.

(b)     Defendant Myles B. McCormick ("McCormick") is, and was at all relevant times, Chief Operations Officer, Chief Financial Officer, Executive Vice President and Secretary of Bare Escentuals.

(c)     Defendants Blodgett and McCormick are referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Bare Escentuals, were privy to confidential and proprietary information concerning Bare Escentuals, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Bare Escentuals, as discussed in detail below. Because of their positions with Bare Escentuals, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct

1  complained of herein.  Because of their positions of control, the Individual Defendants were able to

2  and did, directly or indirectly, control the conduct of Bare Escentuals' business.

3       11.    The Individual Defendants, because of their positions with the Company, controlled

4  and/or possessed the authority to control the contents of its reports, press releases and presentations

5  to securities analysts and through them, to the investing public.  The Individual Defendants were

6  provided with copies of the Company's reports and press releases alleged herein to be misleading,

7  prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or

8  cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the

9  fraudulent acts alleged herein.

10       12.    As senior executive officers and/or directors and as controlling persons of a publicly

11  traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange

12  Act, and was, and is, traded on the NASDAQ National Market ("NASDAQ") and governed by the

13  federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and

14  truthful information with respect to Bare Escentuals' financial condition and performance, growth,

15  operations, financial statements, business, products, markets, management, earnings and present and

16  future business prospects, and to correct any previously issued statements that had become

17  materially misleading or untrue, so that the market price of Bare Escentuals common stock would be

18  based upon truthful and accurate information.  The Individual Defendants' misrepresentations and

19  omissions during the Class Period violated these specific requirements and obligations.

20       13.    The Individual Defendants are liable as participants in a fraudulent scheme and

21  course of conduct that operated as a fraud or deceit on purchasers of Bare Escentuals common stock

22  by disseminating materially false and misleading statements and/or concealing material adverse

23  facts.  The scheme: (i) deceived the investing public regarding Bare Escentuals' business, operations

24  and management and the intrinsic value of Bare Escentuals' common stock; (ii) allowed Defendants

25  Blodgett and McCormick and other Company insiders to collectively sell 18,920,048 shares of their

26  personally-held Bare Escentuals common stock for gross proceeds in excess of $644 million; and

27  (iii) caused plaintiff and members of the Class to purchase Bare Escentuals common stock at

28  artificially inflated prices.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 3 -

**CLASS ACTION ALLEGATIONS**

14. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Bare Escentuals between November 7, 2006 and November 26, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bare Escentuals common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bare Escentuals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

17. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Bare Escentuals;

1    (c)    whether the price of Bare Escentuals common stock was artificially inflated

2  during the Class Period; and

3    (d)    to what extent the members of the Class have sustained damages and the

4  proper measure of damages.

5    19.    A class action is superior to all other available methods for the fair and efficient

6  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

7  damages suffered by individual Class members may be relatively small, the expense and burden of

8  individual litigation make it impossible for members of the Class to individually redress the wrongs

9  done to them.  There will be no difficulty in the management of this action as a class action.

10    **SUBSTANTIVE ALLEGATIONS**

11    20.    Defendant Bare Escentuals describes itself as "one of the leading prestige cosmetic

12  companies in the United States and an innovator in mineral-based cosmetics. The company utilizes a

13  distinctive marketing strategy and multi-channel distribution model to develop, market and sell

14  cosmetics, skin care, and body care products under its bareMinerals, RareMinerals, Buxom and md

15  formulations brands worldwide."

16    21.    The Class Period begins on November 7, 2006.  On that date, Bare Escentuals issued

17  a press release announcing its financial results for the third quarter of fiscal 2006, the period ended

18  October 1, 2006.  For the quarter, the Company reported net sales of $97.9 million and net income of

19  $8.9 million, or $0.12 per diluted share on approximately 73.5 million shares outstanding.

20  Commenting on the announcement, Defendant Blodgett stated, in pertinent part, as follows:

21    We are very pleased with the results achieved during the third quarter of fiscal 2006.
      Our strong performance reflects Bare Escentuals' continued growing brand
22    awareness and the increasing consumer demand for our mineral-based products, and
      is a testament to the hard work and dedication of our entire organization. We at Bare
23    Escentuals are extremely grateful for the loyalty and passion of our Bare Escentuals
      community, who helped us win our second consecutive Glamour magazine Glammy
24    Award for Best Prestige Foundation.

25    We are delighted to have successfully completed our initial public offering and we
      are extremely excited about our prospects for the future. Bare Escentuals pioneered
26    the mineral-based cosmetics category and we believe that our leading market
      position, coupled with our solid relationships with our customers and reinforcing
27    multi-channel distribution strategies, provides us with multiple long-term growth
      opportunities, both domestically and internationally. We plan to continue to

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 5 -

selectively broaden our distribution and further increase brand awareness through media and customer-focused events.

With regard to the Company's guidance for 2007, the press release stated, in pertinent part, as follows:

For the fourth quarter of fiscal 2006, the Company expects sales to grow in the range of 28% to 33% from the same period last year and diluted earnings per share to be in the range of $0.12 to $0.13 on approximately 92.5 million shares outstanding. The Company expects sales for fiscal 2007 to grow in the range of 18% to 22% compared to fiscal 2006 and diluted earnings per share to be in the range of $0.81 to $0.86 on approximately 92.6 million shares outstanding.

22.    On February 28, 2007, Bare Escentuals issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2006, the period ended December 31, 2006. For the quarter, the Company reported net sales of $110.5 million and net income of $16.3 million, or $0.18 per diluted share on approximately 92.0 million shares outstanding. Commenting on the announcement, Defendant Blodgett stated, in pertinent part, as follows:

We are extremely pleased with our performance for the fourth quarter and fiscal 2006. The Bare Escentuals brand continues to flourish due to the amazing support of our customers, partners, and employees. We plan to continue this momentum into 2007 with the launch of innovative new products and the expansion of our distribution channels both here and abroad. In addition, we'll be launching a nationwide tour to connect directly with our customers in order to ensure we're doing everything we can to exceed their expectations.

With regard to the Company's guidance for 2007, the press release stated, in pertinent part, as follows:

The Company now expects fiscal 2007 diluted earnings per share to be in the range of $0.84 to $0.89 on approximately 92.6 million shares outstanding. This change represents an increase of $0.03 over the prior earnings guidance.

23.    Following the press release, Bare Escentuals held a conference call with investors and analysts to discus the Company's earnings and operations.  With regard to the Company's infomercial business, President of Wholesale Sales Diane Miles ("Miles") stated, in pertinent part, as follows:

Our products, our marketing and our merchandising is translating well in all of our channels. Our infomercial business ended the year at +33% over '05. Our infomercial continues to be key for creating awareness and educating the customer on the efficiency of our product. In 2006, our infomercial was shown over 540 times a week, which equates to 28,000 times a year. At this point, we're happy with our existing level of exposure as it relates to the current frequency of our airing. Hence, we expect only a modest growth in our media time for 2007. Our focus, therefore,

1
2

> will be further leverage of our existing brand awareness through a strategic expansion in bricks and mortar.

3

> \*       \*       \*

4
5

> As with the infomercial, we are very comfortable with our existing on-air presence and thus, we anticipate modest growth in 2007 with emphasis upon growing internet and improving continuity in this channel.

6

> \*       \*       \*

7
8

> Okay, so just on the infomercial, we're growing some and done back end but probably growing back end faster than front end. So with the media spend, we're still attracting new customers. And then with the continuity, that's consistently growing as we increase the number of customers on our database.

9   During the conference call, defendants made numerous positive statements about the Company and

10  its business.

11          24.     On March 13, 2007, Bare Escentuals issued a press release announcing the "pricing of

12  a public offering of 12,000,000 shares of its common stock at a price to the public of $34.50 per

13  share. Of these shares, 575,000 shares of common stock were to be sold by Bare Escentuals and

14  11,425,000 shares of common stock were to be sold by certain stockholders of the Company,

15  including funds affiliated with Berkshire Partners LLC, funds affiliated with JH Partners, LLC and

16  certain members of Bare Escentuals' management. In addition, certain of the selling stockholders

17  have granted the underwriters an option to purchase up to an additional 1,800,000 shares at the

18  public offering price."  In connection with the offering, the Company filed and disseminated a

19  registration statement, which contained many positive statements about the Company.

20          25.     On May 2, 2007, Bare Escentuals issued a press release announcing its financial

21  results for the first quarter of fiscal 2007, the period ended April 1, 2007.  For the quarter, the

22  Company reported net sales of $115.6 million and net income of $20.4 million, or $0.22 per diluted

23  share on approximately 92.6 million shares outstanding.   Commenting on the Company's

24  performance during the quarter, Defendant Blodgett stated, in pertinent part, as follows:

25

> The first quarter of 2007 was a very good quarter for the company and a continuation of the strong growth we delivered in 2006. While our sales and earnings speak to our outstanding performance, it is the strength of our brand and dedication of our customers that genuinely reflect our success. As we expand distribution channels worldwide, we remain committed to providing the highest quality bareMinerals products and customer service, as well as maintaining our brand excellence and industry leadership.

26
27
28

1 With regard to the Company's guidance for 2007, the press release stated, in pertinent part, as

2 follows:

3     Based on stronger-than-expected first quarter results, Bare Escentuals expects fiscal 2007 diluted earnings per share to be in the range of $0.89 to $0.94 on approximately

4     93.2 million shares outstanding. This change represents an increase of $0.05 over the prior earnings guidance. The Company continues to anticipate that earnings will be

5     weighted toward the second half of fiscal 2007.

6     26. Following the press release, Bare Escentuals and other insiders held a conference call

7 with investors and analysts to discuss the Company's earnings and operations. With regard to the

8 Company's infomercial business, Defendant Blodgett stated, in pertinent part, as follows:

9     We are also very excited to announce that we are launching our fifth bareMinerals infomercial this month. For the past five years the infomercial has been a key

10     channel for us to market, educate, and acquire customers and we have taken our collective learning's to produce our highest quality infomercial to date.

11

12     We believe this latest edition better demonstrates the connection we have with our customers and the contagious excitement surrounding Bare Escentuals.

13     It includes some terrific footage of in-store events at our boutiques and at our prestige partners such as Sephora. And the testimonials manage to get better and

14     better as we continue to use the voice of our customers to help educate and generate brand awareness.

15                               *      *      *      *

16

17     Lori Scherwin - Goldman Sachs - Analyst

18     And then just lastly, you mentioned a change in the infomercial and I was just curious, Leslie, what you've seen in the last four times you upgraded the infomercial.

19     Did it really result in an up tick in sales or was it just sort of reenergizing the media?

20     Leslie Blodgett - Bare Escentuals Inc. - CEO

21     Yes, we do see an upside in sales and every time we do a new infomercial it's a completely different looking show from many aspects. And the offer changes as well.

22     So even people, I believe, who bought into the other one might want to try the new offer as well.

23     And, yes, we've included RareMinerals as a free gift in this infomercial too and that's a great value and a great way to sample our new exciting night treatment.

24

25 During the conference call, defendants made numerous positive statements about the Company and

26 its business.

    27. On June 5, 2007, Bare Escentuals issued a press release announcing that it was

27

28 reaffirming its fiscal year 2007 guidance and that the Company was anticipating full year fiscal 2007

diluted earnings to be between $0.89 and $0.94 per share on approximately 93.2 million shares outstanding. With regard to the Company's guidance for the second quarter, the press release stated, in pertinent part, as follows:

> In addition, Bare Escentuals provided quarterly guidance for the second quarter of fiscal 2007. For its second fiscal quarter ending June 30, 2007, the Company anticipates fully diluted earnings to be between $0.20 and $0.22 per share. For the second quarter of fiscal 2007, total sales growth versus the prior year is expected to be in the range of 27% to 30% as the Company continues to experience strong consumer demand for its products. On a channel basis, year-over-year sales growth for the second quarter of fiscal 2007 is expected to be in line with first quarter growth rates, with the exception of the Infomercial channel which is expected to be flat relative to prior year. The Company continues to expect modest growth in infomercial sales in fiscal 2007.

28.     On June 13, 2007, Bare Escentuals issued a press release announcing the "pricing of a public offering of 8,000,000 shares of its common stock at a price to the public of $36.50 per share. Of these shares, 100,000 shares of common stock were to be sold by Bare Escentuals and 7,900,000 shares of common stock were to be sold by certain stockholders of the Company, including funds affiliated with Berkshire Partners LLC, funds affiliated with JH Partners, LLC and certain members of Bare Escentuals' management. In addition, certain of the selling stockholders have granted the underwriters an option to purchase up to an additional 1,200,000 shares at the public offering price." In connection with the offering, the Company filed and disseminated a registration statement, which contained positive statements about the Company.

29.     Throughout the Class Period, Bare Escentuals made filings with the SEC such as Form 10-Ks, 10-Qs and other filings.   These filings contained positive statements about the Company's business.

30.     The statements referenced above in ¶¶21-29 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     that the Company's infomercial business was not performing according to internal expectations and would need to be substantially revamped;

(b)     that the Company's new infomercial had led to an immediate decrease in sales and was not performing to internal expectations; and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          - 9 -

1             (c)     as a result, the Company's growth rate would be slowing from historical

2  growth rates.

3           31.     On August 1, 2007, Bare Escentuals issued a press release announcing its financial

4  results for the second quarter of fiscal 2007, the period ended July 1, 2007.  For the quarter, the

5  Company reported net sales of $124.1 million and net income of $20.2 million, or $0.22 per diluted

6  share on approximately 93.1 million shares outstanding.  Defendant Blodgett, commenting on the

7  Company's performance during the quarter, stated, in pertinent part, as follows:

> Our performance in the second quarter demonstrates the strength and breadth of our multi-channel business model.  We achieved sales growth of 29% as we developed more points of distribution and satisfied the growing consumer demand for our products worldwide. We are excited about our prospects and believe that Bare Escentuals is well-positioned to continue to build upon our market leadership and brand excellence.

With regard to the Company's guidance for 2007, the press release stated, in pertinent part, as follows:

> Bare Escentuals is reaffirming its previously issued fiscal 2007 guidance of diluted earnings per share in the range of $0.89 to $0.94 on approximately 93.2 million shares outstanding.

           32.     Following the press release, Bare Escentuals held a conference call with investors and analysts to discuss the Company's earnings and operations.  With regard to the Company's infomercial business, Defendant Blodgett stated, in pertinent part, as follows:

> The quarter was not without its challenges, however, as the latest version of our infomercial failed to perform to our expectations. The infomercial has been a key channel for us to market, educate and acquire customers, and we are committed to getting this business back on track. From our experience, we know that updating and improving the infomercial is an ongoing process, but we are focused on getting it right in order to build our business for the long term.

President Miles added, in pertinent part, as follows:

> With respect to our infomercial business the second quarter was clearly challenging, as sales were down slightly versus the prior year. In May, we launched the fifth version of our bareMinerals infomercial. Despite high expectations based on the show's updated testimonials and creative content, sales were immediately below our expectations. We responded by testing various re-edits of the show while reallocating the bulk of our media then to the previous version of the infomercial.
>
> While this approach stabilized results and provided a lift over the new show's initial performance, results still are not where we need them to be. As a result, in June, we conducted customer research to determine which aspects of the show were and were not resonating with our customers. Based on that feedback, we have since re-shot

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS       - 10 -

certain scenes and will be testing versions of the new show which includes this footage in August and September.

At the same time, we have conducted an in-depth analysis of consumer behavior within this channel in order to determine to what extent broader economic factors might be impacting the buying decision of this infomercial customer.

We believe that we have considerable more insight into the situation than we did two months ago and we're optimistic that we're taking the corrective steps to improve performance. That said, we think it's prudent to be conservative in our forecasting at this stage, especially given the more difficult year-over-year comparisons in the second half of the year. We are therefore assuming that the infomercial business will be down approximately 10% in the second half of the year.

33.     In response to a question regarding the difference between the Company's statement in June 2007 that the infomercial business "would be up modestly for the year," President Miles and Defendant McCormick stated, in pertinent part, as follows:

Jim Duffy - Thomas Weisel Partners - Analyst

I guess I'm confused. So what's changed in the infomercial business since the press release in early June when you thought it would be up modestly for the year?

Diane Miles - Bare Escentuals, Inc. - President

When we said that, we were actually doing some re-editing on our version five. When we did that re-editing, we did get some traction but not what we really needed. So then that led us to, as I said before, the consumer research, the dial testing. Then we did some re-shooting and we're now continuing to edit and test and it's just taking a long time to test all the different permutations and combinations. So rather than trying to be overly optimistic, we want to give some realistic projections for the fall, because we just don't know how long the editing and testing will take in order to get the traction that we need.

Jim Duffy - Thomas Weisel Partners - Analyst

I see. So, you indicated that there was a slight pick up from May to June and yet your new guidance seems to imply further deceleration in the infomercial business into Q3 and Q4. Is that just being conservative or do you expect some other external factors to have an impact?

Myles McCormick - Bare Escentuals, Inc. - CFO & COO

Well, I think it's a couple of things, Jim. One, it certainly is trying to be realistic relative to the timing of some of our editing processes here, as getting into the shoots is taking a bit longer than we had originally expected. But sort of more of the larger impact, frankly, has to do with an increase in comparables in the back half of the year against Q4 in the prior year where we had incremental sort of media spend against it in the prior year. On a sequential basis, you'll see a slight decline, or what I view today is that we see a slight decline between Q2 and Q3, but between Q3 and Q4 it'll roughly flat from a $9 million perspective. The decline on year-over-year is frankly more representative, more difficult comparison in the prior year than sequential declines being expected in the current year.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 11 -

1    34.    With regard to the infomercial business, Defendant McCormick added, in pertinent
2  part, as follows:

3    Janet Kloppenburg - JJK Research - Analyst

4    Hey Myles. Just to elaborate on that. So it sounds to me like perhaps the infomercial
     run rate has worsened from June to July and do you attribute that to some of the
5    disruption or the testing, or do you think that's just more of consumer falloff? And
     then with respect to the SG&A stands in the third quarter, is some of that incremental
6    spend related to the testing of the new infomercial, or is this more just on the hiring
     that we had talked about, Myles, where some of it didn't get done in the first half and
7    it's being shifted as you see the higher is in the back half. And maybe you could talk
     a little bit about what you meant about the earnings being SKU'd to the fourth
8    quarter. Thanks.

9    Myles McCormick - Bare Escentuals, Inc. - CFO & COO

10   In terms of the SG&A, it absolutely has to do with the organization building; much
     less to do with the incremental investment on the infomercial side. In terms of the
11   infomercial business altogether, it's not as much as a deceleration between June and
     July as it was a deceleration between frankly April and June itself and losing April
12   out of the quarter and getting into a run rate of June. As I said before, we've been
     able to stabilize the business and see incremental improvement on the original V5.
13   That's not to the degree that we had hoped we'd see, so the subsequent shots and the
     tests coming up here. So it's much more to do with current run rate today than
14   anything else.

15   Janet Kloppenburg - JJK Research - Analyst

16   I'm confused then, Myles. Maybe you can help me understand. I thought you said it
     had improved from May to June?
17
     Myles McCormick - Bare Escentuals, Inc. - CFO & COO
18
     That's right. It did and May was sort of the lowest point of the quarter. And then if
19   you look at it, April is the highest point of the quarter, followed by May the lowest
     point. June stabilizing out sort of the business, back up to sort of some of the levels
20   we were seeing back in April.

21   Janet Kloppenburg - JJK Research - Analyst

22   But June went back up to April's level?

23   Myles McCormick - Bare Escentuals, Inc. - CFO & COO

24   Directionally it did, that's correct. And so subsequently we're running off of those
     levels for the balance of the year. That's what it's looking like.
25
     Janet Kloppenburg - JJK Research - Analyst
26
     So it's slowed again is what you're telling us here in the third quarter?
27
     Myles McCormick - Bare Escentuals, Inc. - CFO & COO
28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 12 -

1    We'll be slower on a sequential basis than it was in Q2, that's correct.

2    35.    In response to the Company's announcement that its infomercial sales were

3 weakening, the price of Bare Escentuals common stock fell $3.55 per share, or approximately 13%,

4 to close at $24.75 per share, on extremely heavy trading volume.

5    36.    On October 31, 2007, Bare Escentuals issued a press release announcing its financial

6 results for the third quarter of fiscal 2007, the period ended September 30, 2007.  For the quarter, the

7 Company reported net sales of $126.6 million and net income of $20.5 million, or $0.22 per diluted

8 share on approximately 93.2 million shares outstanding.  Defendant Blodgett, commenting on the

9 Company's performance during the quarter, stated, in pertinent part, as follows:

10    The third quarter marked another quarter of strong sales growth and increased
      profitability.  Our strong financial performance reflects our continued ability to
11    increase brand awareness, execute alongside our retail partners and expand our points
      of presence both domestically and abroad. As we look to our next stage of growth,
12    we remain committed to our multi-channel distribution model to educate consumers
      of the benefits of mineral-based makeup and extend the reach of the Bare Escentuals
13    brand worldwide.

14 With regard to the Company's guidance, the press release stated, in pertinent part, as follows:

15    Bare Escentuals is affirming its fiscal 2007 diluted earnings per share guidance of a
      range of $0.89 to $0.94 on approximately 93.2 million shares outstanding.
16
      For fiscal 2008, the Company expects sales growth to be in line with its long-term
17    revenue growth target of between 20 to 25%. The Company also expects earnings to
      grow in line with its long-term earnings growth rate of roughly 25%, implying
18    earnings per share in the range of $1.13 to $1.18 per diluted share.

19    37.    Following the press release, Bare Escentuals held a conference call with investors and

20 analysts to discuss the Company's earnings and operations.  With regard to the Company's

21 infomercial business, Defendant Blodgett stated, in pertinent part, as follows:

22    Our infomercials business has also been an important driver of overall brand
      awareness in addition to being a profitable customer acquisition channel. We believe
23    that our strong results at retail reflect the educational and brand-building benefits of
      the infomercial, and that will continue to be strategically important as brick and
24    mortar retail drive our next stage of growth. This year; however, we've had some
      challenges with our infomercial. We launched a new show in May that did not
25    perform to our expectations. We have since tested various reedits of the program
      including a recent version in September that included new footage. But our efforts
26    have not yielded improved results. After a full evaluation, we recognize that this
      show (inaudible) made us successful in the past. The infomercial has always been
27    about telling a focussed story about Bare Minerals foundation to women with skin
      issues. This time we tried to appeal to a much broader audience and spent too much
28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 13 -

time telling the story of the Bare Escentuals brand and not enough time communicating what makes our foundation so unique and so effective.

38.     In response to the Company's announcement of continued weakness in its infomercial business, the price of Bare Escentuals common stock fell $2.24 per share, or approximately 8%, to close at $24.70 per share, on extremely heavy trading volume.

39.     On November 26, 2007, the Company issued a press release announcing that President Miles had resigned to "pursue other opportunities, effective immediately."

40.     In response to the announcement of the resignation of Miles, shares of the Company's stock fell $3.42 per share over the next two trading days, to close at $19.75 per share on November 28, 2007.

41.     On November 29, 2007, the Company issued a press release announcing, among other things, that it was "reiterating the Company's previously issued fiscal 2007 diluted earnings per share guidance of a range of $0.89 to $0.94 on approximately 93.2 million shares outstanding and its fiscal 2008 diluted earnings per share guidance of a range of $1.13 to $1.18."

42.     On February 26, 2008, Bare Escentuals issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2007, the period ended December 30, 2007.  For the quarter, the Company reported net sales of $144.6 million and net income of $27.0 million, or $0.29 per diluted share on approximately 93.3 million shares outstanding.  Defendant Blodgett, commenting on the Company's performance during the quarter, stated, in pertinent part, as follows:

> We are very pleased with our fourth quarter financial results as we experienced continued strong brand momentum.  We attribute our performance to the great efforts put forth by our retail partners, suppliers, employees and, of course, the loyal community of Bare Escentuals customers. We intend to continue to build upon this momentum in 2008 by expanding our product offering and by increasing access to Bare Escentuals products both here and abroad.

With regard to the Company's guidance, the press release stated, in pertinent part, as follows:

> For fiscal 2008, the Company continues to expect sales to grow in the range of 20% to 25% compared to fiscal year 2007 and diluted earnings per share to be in the range of $1.13 to $1.18.

43.     The market for Bare Escentuals common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Bare Escentuals common stock traded at artificially inflated prices during the

Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Bare Escentuals common stock relying upon the integrity of the market price of Bare Escentuals common stock and market information relating to Bare Escentuals, and have been damaged thereby.

44. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Bare Escentuals common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

45. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Bare Escentuals' business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Bare Escentuals and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

46. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Bare Escentuals, their control over, and/or receipt

and/or modification of Bare Escentuals' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bare Escentuals, participated in the fraudulent scheme alleged herein.

47. Defendants were further motivated to engage in this course of conduct in order to allow defendants Blodgett and McCormick and other Company insiders to collectively sell 18,920,048 shares of their personally-held Bare Escentuals common stock for gross proceeds in excess of $644.2 million. The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| LESLIE BLODGETT | 3/19/2007 | 695,169 | $33.03 | $22,961,432 |
| | 3/19/2007 | 210,000 | $33.03 | $6,936,300 |
| | 3/19/2007 | 210,000 | $33.03 | $6,936,300 |
| | 3/19/2007 | 105,000 | $33.03 | $3,468,150 |
| | 6/19/2007 | 500,000 | $35.77 | $17,885,000 |
| | | 1,720,169 | | $58,187,182 |
| | | | | |
| JOHN HANSEN | 3/19/2007 | 1,341,184 | $33.03 | $44,299,308 |
| | 6/19/2007 | 823,672 | $35.77 | $29,462,747 |
| | | 2,164,856 | | $73,762,055 |
| | | | | |
| MYLES MCCORMICK | 6/19/2007 | 20,072 | $35.77 | $717,975 |
| | | | | |
| LEA OTTINGER | 3/19/2007 | 33,711 | $33.03 | $1,113,474 |
| | 6/19/2007 | 14,000 | $35.77 | $500,780 |
| | | 47,711 | | $1,614,254 |
| | | | | |
| KAREN ROSE | 6/19/2007 | 5,134 | $35.77 | $183,643 |
| | | | | |
| GLEN SENK | 3/19/2007 | 20,000 | $33.03 | $660,600 |
| | 6/19/2007 | 20,000 | $35.77 | $715,400 |
| | | 40,000 | | $1,376,000 |
| | | | | |
| Fifth Berkshire Associates LLC | 3/19/2007 | 3,123,949 | $33.03 | $103,184,035 |
| (Bloom, Jones) | 3/19/2007 | 2,870,504 | $33.03 | $94,812,747 |
| | 3/19/2007 | 320,663 | $33.03 | $10,591,499 |
| | 6/19/2007 | 1,918,524 | $35.77 | $68,625,603 |
| | 6/19/2007 | 1,762,875 | $35.77 | $63,058,039 |
| | 6/19/2007 | 196,930 | $35.77 | $7,044,186 |
| | | 10,193,445 | | $347,316,110 |
| | | | | |
| JH MDB Investors, L.P. | 3/19/2007 | 2,899,720 | $33.03 | $95,777,752 |
| (Hansen, John) | 6/19/2007 | 1,780,824 | $35.77 | $63,700,074 |
| | | 4,680,544 | | $159,477,826 |
| | | | | |
| JH Partners, LLC | 3/19/2007 | 29,813 | $33.03 | $984,723 |

| | | | | |
|---|---|---|---|---|
| (Hansen, John) | 6/19/2007 | 18,304 | $35.77 | $654,734 |
| | | 48,117 | | $1,639,457 |
| | | | | |
| | Total: | 18,920,048 | | $644,274,503 |

### Loss Causation/Economic Loss

48.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Bare Escentuals common stock and operated as a fraud or deceit on Class Period purchasers of Bare Escentuals common stock by failing to disclose to investors that the Company was experiencing weakness in its infomercial business.  When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Bare Escentuals common stock fell precipitously as the prior artificial inflation came out.  As a result of their purchases of Bare Escentuals common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

49.     By failing to disclose to investors that the Company was experiencing weakness in its infomercial business, defendants presented a misleading picture of Bare Escentuals' business and prospects.  Defendants' false and misleading statements had the intended effect and caused Bare Escentuals common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $42.99 per share on May 30, 2007.

50.     As a direct result of information disclosed on August 1, 2007, October 31, 2007 and November 26, 2007, the price of Bare Escentuals common stock fell precipitously, falling from $28.30 per share on August 1, 2007 to $19.75 per share on November 28, 2007 – a decline of 30%. These drops removed the inflation from the price of Bare Escentuals common stock, causing real economic loss to investors who had purchased Bare Escentuals common stock during the Class Period.

51.     The 30% decline in the price of Bare Escentuals common stock after these disclosures came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline in Bare Escentuals common stock negates any inference that the loss suffered by plaintiff and the other Class members

was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Bare Escentuals common stock and the subsequent significant decline in the value of Bare Escentuals common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

52.     At all relevant times, the market for Bare Escentuals common stock was an efficient market for the following reasons, among others:

(a)     Bare Escentuals common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, Bare Escentuals filed periodic public reports with the SEC and the NASDAQ;

(c)     Bare Escentuals regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Bare Escentuals was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

53.     As a result of the foregoing, the market for Bare Escentuals common stock promptly digested current information regarding Bare Escentuals from all publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all purchasers of Bare Escentuals common stock during the Class Period suffered similar injury through their purchase of Bare Escentuals common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Bare Escentuals who knew that those statements were false when made.

**COUNT I**

**Violation of §10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder Against All Defendants**

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bare Escentuals common stock.  Plaintiff and the

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                     - 19 -

Class would not have purchased Bare Escentuals common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

59.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Bare Escentuals common stock during the Class Period.

**COUNT II**

**Violation of §20(a) of the Exchange Act**
**Against the Individual Defendants**

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Bare Escentuals within the meaning of §20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Bare Escentuals, and their ownership of Bare Escentuals stock, the Individual Defendants had the power and authority to cause Bare Escentuals to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

1

**JURY DEMAND**

2        Plaintiff hereby demands a trial by jury.

3   DATED:  July 17, 2009                          COUGHLIN STOIA GELLER
                                                      RUDMAN & ROBBINS LLP
4                                                  SHAWN WILLIAMS

5

6                                                  _____
                                                              /s/
                                                   SHAWN WILLIAMS
7
                                                   100 Pine Street, Suite 2600
8                                                  San Francisco, CA  94111
                                                   Telephone:  415/288-4545
9                                                  415/288-4534 (fax)

10                                                 COUGHLIN STOIA GELLER
                                                      RUDMAN & ROBBINS LLP
11                                                 SAMUEL. RUDMAN
                                                   DAVID A. ROSENFELD
12                                                 MARIO ALBA JR.
                                                   58 South Service Road, Suite 200
13                                                 Melville, NY  11747
                                                   Telephone:  631/367-7100
14                                                 631/367-1173 (fax)

15                                                 BISCEGLIE & DE MARCO, LLC
                                                   ANGELO R. BISCEGLIE, JR.
16                                                 365 Rifle Camp Road
                                                   West Paterson, NJ  07424
17                                                 Telephone:  973/742-8900
                                                   973/742-8394 (fax)

18
                                                   Attorneys for Plaintiff
19
    S:\CptDraft\Securities\Cpt Bare Escentuals.doc
20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 21 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4                                        _____/s/_____
                                         ATTORNEY OF RECORD FOR PLAINTIFF
5                                        SHAWN A. WILLIAMS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28