NORMAN J. BLEARS, BAR NO. 95600
KRISTI K. ELDER, BAR NO. 231996
HOGAN LOVELLS US LLP
525 University Avenue, 4th Floor
Palo Alto, California 94301
Telephone:   (650) 463-4000
Facsimile:   (650) 463-4199
Email: norman.blears@hoganlovells.com
       kris.elder@hoganlovells.com

ROBIN E. WECHKIN (*admitted pro hac vice*)
HOGAN LOVELLS US LLP
8426 316th Pl. SE
Issaquah, Washington 98027
Telephone:   (425) 222-6229
Facsimile:   (650) 463-4199
Email: robin.wechkin@hoganlovells.com

*Attorneys for Defendants*
Goldman, Sachs & Co., CIBC World
Markets, Banc of America Securities LLC,
Piper Jaffray Companies, Thomas Weisel
Partners LLC, and Suntrust Robinson
Humphrey, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE BARE ESCENTUALS, INC. SECURITIES LITIGATION | Master File No.  C-09-03268-PJH |
| _____ | **UNDERWRITERS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| This Document Relates To: | The Honorable Phyllis J. Hamilton |
| All Actions | Courtroom 3, 3rd Floor<br>Date: July 14, 2010<br>Time: 9:00 a.m. |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 3

    A. Plaintiffs Cannot Escape Their Obligation To Plead Facts Establishing Compliance With The Statute Of Limitations. ....................................................... 3

    B. Plaintiffs' Securities Act Claims Are Barred By The One-Year Limitations Period In Section 13. ............................................................................. 4

        1. Plaintiffs Concede That Investors Discovered The Facts Demonstrating The Alleged Falsity Of The Challenged Statements In February 2008. ................................................................... 4

        2. Bare Escentuals Did Not Make "Reassuring" Statements Sufficient To Dissipate Investors' Discovery Of The Relevant Facts. ........................................................................................................... 7

        3. Plaintiffs' Loss Causation Allegations Confirm Discovery Of The Relevant Facts In 2007 And 2008. .......................................................... 9

        4. Plaintiffs Do Not Seriously Defend The Timeliness Of Their Claims With Respect To Their "Club Deals" And Leftover Theories. ........................................................................................................ 11

III. CONCLUSION ................................................................................................................ 12

APPENDIX OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT ....................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Betz v. Trainer Wortham & Co., Inc.*,
 519 F.3d 863 (9th Cir. 2008), *vacated,* -- U.S. --, 2010 WL 1740527 (May 3, 2010)...... *passim*

*Great Rivers Co-op v. Farmland Indus., Inc.*,
 120 F.3d 893 (8th Cir. 1997).................................................................................................. 8, 9

*GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund*,
 580 F. Supp. 2d 321 (S.D.N.Y. 2008) ......................................................................................... 9

*In re American Funds Sec. Litig.*,
 556 F. Supp. 2d 1100 (C.D. Cal. 2008) ....................................................................................... 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................................ 10, 11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
 289 F. Supp. 2d 429 (S.D.N.Y. 2003) ......................................................................................... 9

*Johnson v. Alijan*,
 490 F.3d 778 (9th Cir. 2007)........................................................................................................ 3

*Kreek v. Wells Fargo & Co.*,
 652 F. Supp. 2d 1053 (N.D. Cal. 2009) ................................................................................... 5, 7

*Merck & Co., Inc. v. Reynolds,*
 -- U.S. --, 2010 WL 1655827 (April 27, 2010)............................................................... *passim*

*Toombs v. Leone*,
 777 F.2d 465 (9th Cir. 1985)................................................................................................... 3, 4

**STATUTES AND RULES**

15 U.S.C. § 77k (Section 11 of the Securities Act).................................................................... 5, 6

15 U.S.C. § 77*l* (a)(2)  (Section 12(a)(2) of the Securities Act) ................................................. 5, 6

15 U.S.C. § 77m  (Section 13 of the Securities Act) ............................................................ *passim*

15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act) ..................................... 1, 5, 6

28 U.S.C. § 1658 ............................................................................................................................ 5

Fed. R. Civ. Proc. 12(b)(6)............................................................................................................. 5

# I. INTRODUCTION

Plaintiffs cannot and do not dispute that their claims against the underwriters are governed by the one-year limitations period in Section 13 of the Securities Act. That period begins to run as soon as plaintiffs discover or should have discovered that the statements they are challenging were purportedly untrue. As the underwriters pointed out in their opening brief, plaintiffs themselves assert that the alleged wrongdoing was revealed to the market on six occasions in 2007 and 2008. The first purported revelation was made on June 5, 2007, and five of the six were made more than one year before plaintiffs commenced this action. These revelations necessarily mark the dates on which plaintiffs should have discovered the facts underlying their claims.

At the very latest, the relevant discovery occurred on February 26, 2008, when Bare Escentuals publicly discussed the fact that its products were being sold by the discount stores Costco and Target. Plaintiffs concede, as they must, that investors learned of the Costco and Target sales on that date. And the occurrence of these sales is precisely the fact that, according to plaintiffs' allegations, rendered the company's statements untrue: Plaintiffs assert that in light of those sales, the company made false representations when it referred to its "premium image" and "mutually reinforcing distribution channels."

Plaintiffs' admission makes this case very simple. The statute began to run, at the latest, in February 2008. It expired one year later, in February 2009. Plaintiffs' claims against the underwriters are time-barred because they were not filed until August 2009.

Plaintiffs attempt to complicate this straightforward analysis, but the arguments in their opposition brief cannot change the outcome.

*First*, the analysis is unaffected by the rule announced by the Supreme Court in its very recent *Merck* decision – the rule that the limitations period for *Section 10(b) claims* does not run until plaintiffs have discovered that defendants acted with *scienter*. Scienter is not an element of the Securities Act claims asserted against the underwriters. And Section 13 of the Securities Act, unlike the statute of limitations governing Section 10(b) claims, provides that the limitations period is triggered by discovery of *one fact and one fact alone*: that the challenged statement was

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS                     1
C-09-03268-PJH

\\\035984/000001 - 42448 v8

1   purportedly *untrue*.

2   *Second*, the two-step analysis adopted by the Ninth Circuit before *Merck* was decided –
3   inquiry notice plus reasonable investigation – is irrelevant here.  A second holding of *Merck does*
4   apply to this issue.  *Merck* reduced the two-part framework set out in *Betz v. Trainer Wortham*
5   and other cases to a single step:  determining when plaintiffs discovered or should have
6   discovered the relevant facts.  Plaintiffs have made that determination very easy here by admitting
7   that they discovered or should have discovered those facts in February 2008.

8   *Third*, the effect of this discovery was not dissipated by purportedly "reassuring"
9   statements made by the company.  Plaintiffs mischaracterize the company's statements and
10  misread the law on this point.  The company did not assure investors that it would prevail in its
11  suit against Costco or that sales by discounters would be stopped.  Bare Escentuals made no
12  promises about the outcome of that litigation, and did not even express optimism about it.  The
13  company said nothing that undermined or discounted its disclosure that discounters were selling
14  its products.

15  *Finally*, plaintiffs cannot excuse their untimeliness by pointing to the fact that Bare
16  Escentuals' stock price did not decline after the February 2008 announcement.   If anything, this
17  fact reveals the basic flaw in the merits of plaintiffs' claim:  The absence of any decline suggests
18  strongly that sales by discounters were not material and that the alleged omission of information
19  concerning those sales did not cause injury to plaintiffs or other investors.  But for limitations
20  purposes, the relevant question is not whether or when the market downgraded its estimate of
21  company stock.  That is the issue of *loss*.  For limitations purposes, the question is when plaintiffs
22  discovered the facts that, according to their theory of the case, rendered the challenged statements
23  *untrue*.  That occurred, at the latest, in February 2008.  Plaintiffs' claims against the underwriters,
24  brought 18 months later, are time-barred and should be dismissed.

25  The Court may also dismiss the claims on an even simpler basis.  Plaintiffs have the
26  burden of pleading compliance with the statute of limitations and have not done so.  We discuss
27  this procedural issue first.  We join the Bare defendants' reply as to other bases for dismissal.[1]

28  _____
[1] As in our opening brief, we limit our discussion to statute of limitations issues.  We note that

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS                2
C-09-03268-PJH
\\\035984/000001 - 42448 v8

## II.     ARGUMENT

### A.     Plaintiffs Cannot Escape Their Obligation To Plead Facts Establishing Compliance With The Statute Of Limitations.

As the underwriters pointed out in their opening brief, plaintiffs have chosen to devote only a single boilerplate paragraph in their complaint to the limitations issue. Underwriters' Notice of Motion, Motion to Dismiss and Memorandum Of Points & Authorities (UW Mot.) at 7-9. In that paragraph, plaintiffs do nothing more than parrot the language of Section 13. *Id.*; Com. ¶ 230. Under controlling law, this is plainly insufficient. Pursuant to two separate lines of authority, the courts in this Circuit require plaintiffs in the circumstances here to assert *facts* – not boilerplate conclusions – establishing the timeliness of their claims.

The first line of authority is headed by *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985), in which the Ninth Circuit held that Section 13 places the burden of pleading compliance with the applicable limitations period on Securities Act plaintiffs. UW Mot. at 8 (collecting additional authorities). Plaintiffs do not attempt to argue that their conclusory allegations meet the requirements of *Toombs* or its progeny. Instead, plaintiffs say in a footnote that the underwriters' reliance on *Toombs* is "misplaced" because the decision has been "highly criticized." Lead Pls' Corrected Mem. Of Points & Authorities in Opposition To The Underwriter Defendants' Motion To Dismiss (Opp). at 21 n.14. Plaintiffs then cite a footnote in *Johnson v. Alijan*, 490 F.3d 778, 781 n.13 (9th Cir. 2007), a decision the underwriters themselves brought to the Court's (and plaintiffs') attention. UW Mot. at 8 n. 4. In the *Johnson* footnote on which plaintiffs rely, the Ninth Circuit declined to extend *Toombs* to Section 10(b) claims and stated that *Toombs* had sustained "forceful" criticism. But the *Johnson* panel did not purport to overrule – and had no authority to overrule – the earlier decision. *Toombs* remains the law of this Circuit unless overruled by an en banc panel or by the Supreme Court. Plaintiffs have not complied with *Toombs* and do not argue that they have. Their Securities Act claims should be dismissed for this

---

plaintiffs have devoted the bulk of their opposition to the underwriters' motion to issues briefed solely by the Bare defendants – perhaps as a way of remaining in compliance with the Court's orders regarding length of briefs.

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS                     3
C-09-03268-PJH

\\\035984/000001 - 42448 v8

1  reason alone.

2        Plaintiffs say nothing at all about the second line of authority imposing the burden of

3  pleading compliance on them – the case law that shifts that burden to plaintiffs when the

4  limitations issue appears on the face of the complaint.  UW Mot. at 8-9 and authorities cited

5  there.  Plaintiffs do not dispute that the issue of timeliness appears – glaringly – on the face of

6  their complaint.  Nor do plaintiffs argue that they have satisfied or even attempted to satisfy their

7  burden of pleading facts demonstrating that their claims are timely.  Plaintiffs' failure to plead

8  such facts is not a surprising result:  As we discuss again below, the relevant facts establish that

9  plaintiffs' claims are *not* timely.  Given plaintiffs' complete failure to shoulder their pleading

10  burden, however, the Court need not even reach the facts to dismiss plaintiffs' Securities Act

11  claims.

    **B.**    **Plaintiffs' Securities Act Claims Are Barred By The One-Year Limitations Period In Section 13.**

          **1.**    **Plaintiffs Concede That Investors Discovered The Facts Demonstrating The Alleged Falsity Of The Challenged Statements In February 2008.**

16        On the merits, the controlling legal standard is not in dispute.  Plaintiffs do not dispute

17  that they must bring suit within one year of the date they discovered or should have discovered

18  that the challenged statements were purportedly untrue.  15 U.S.C. § 77m.  Here, that discovery

19  took place, at the latest, when the company sued Costco and subsequently discussed the lawsuit

20  and underlying issues with investors.  The latter event occurred on February 28, 2008, when Bare

21  Escentuals' management spoke about the matter in a quarterly earnings conference call.  The

22  statutory period expired one year later, in February 2009.  Plaintiffs' lawsuit, filed in August

23  2009, is time-barred.[2]

---

[2] Plaintiffs argue that they should not be required to "diligently scour the . . . federal PACER dockets," and thus should not be deemed to have discovered the Costco lawsuit in January 2007, when it was filed.  UW Opp. at 21.  But the underwriters' motion does not depend on discovery in January 2007.  Plaintiffs' suit is untimely because it was filed outside the one-year period that began to run, at the latest, in February 2008 and expired in February 2009.

Plaintiffs also object to the submission of the Costco complaint with the underwriters' opening brief, arguing that "the Underwriter Defendants would have this Court take as true the Costco complaint's allegations . . . ."  Plaintiffs are wrong.  The underwriters submitted the Costco

In response, plaintiffs rely heavily on *Merck & Co., Inc. v. Reynolds,* -- U.S. --, 2010 WL 1655827 (April 27, 2010), which was issued after defendants filed their opening briefs, and on *Betz v. Trainer Wortham & Co., Inc.*, 519 F.3d 863 (9th Cir. 2008), *vacated,* -- U.S. --, 2010 WL 1740527 (May 3, 2010).[3] In one important respect, *Merck* and *Betz* are inapplicable here. Both involve Section 10(b) claims rather than Section 11 or Section 12(a)(2) claims. The limitations periods for Section 10(b) claims are contained in 28 U.S.C. § 1658, which was enacted as part of the anti-fraud program of the Sarbanes-Oxley Act of 2002. The limitations periods for Sections 11 and 12(a)(2), as noted, are contained in Section 13 of the Securities Act. Under both statutes, the limitations period is triggered by "discovery." But *what* must be discovered is quite different in the two statutory regimes.

For Section 10(b) claims, the limitations period is triggered when plaintiffs discover (or should have discovered) the "***facts constituting the violation***." 28 U.S.C. § 1658(b) (emphasis added). Both *Merck* and *Betz* held that facts relating to scienter – the element of Section 10(b) that makes it a fraud claim – are among the facts constituting the violation. In Justice Breyer's words, "[i]t would . . . frustrate the very purpose of the discovery rule in [Section 1658] – which, after all specifically applies only in cases 'involv[ing] a claim of fraud, deceit, manipulation or contrivance,' § 1658(b) – if the limitations period began to run regardless of whether a plaintiff had discovered any facts suggesting scienter." 2010 WL 1655827, at *12. Because Section 1658 governs fraud claims, scienter, which is an "important and necessary" element of fraud, must be discovered before the limitations period can begin running. *Id.*

Under Section 13, by contrast, the limitations period runs from plaintiffs' "discovery of ***the untrue statement or the omission.***" 15 U.S.C. § 77m (emphasis added). Because scienter is not an element of the Securities Act claims at issue here, discovery of scienter-related facts is

---

complaint, which is referred to extensively in plaintiffs' own complaint, to show that the Costco complaint existed and was publicly available – not that the allegations in it were true. Including such materials with Rule 12(b)(6) motions on statute of limitations grounds is altogether acceptable and routine. *E.g., Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1057, 1059 (N.D. Cal. 2009) (in ruling on motion to dismiss on statute of limitations grounds, court considers materials cited in the complaint, including pleadings in third-party litigation).

[3] The *Betz* decision was vacated, after plaintiffs filed their opposition brief, for reconsideration in light of the Supreme Court's decision in *Merck*.

obviously not necessary to trigger the statute of limitations. Discovery of one fact and one fact alone serves as that trigger: the fact that a statement in the prospectus or registration statement is, in plaintiffs' view, untrue.

In this case, plaintiffs' own assertions make clear when they discovered that fact. Plaintiffs *admit,* as they must, that investors "finally learn[ed] about the Costco/Target sales in February 2008. . . ." Opp. at 21. And the occurrence of the Costco and Target sales is, according to plaintiffs' allegations, the very fact that made the challenged statements in the prospectus and registration statement untrue.

There can be no doubt on this point. Plaintiffs assert that in light of the sales by discounters, the company's statements about its mutually reinforcing sales channels and the premium image of its brands were false. *E.g.*, Com. ¶¶ 11, 63, 75.[4] Similarly, plaintiffs assert that because the company's products were sold by discounters, defendants misled investors by referring to the company's contract with QVC, pursuant to which Bare Escentuals agreed not to sell products in discount or warehouse stores. *Id.* ¶¶ 66-67.[5]

Investors thus learned, in February 2008 at the latest, precisely the fact that, according to plaintiffs' theory of the case, rendered the challenged statements untrue. This discovery triggered the one-year limitations period of Section 13. That period expired in February 2009. When plaintiffs first brought claims against the underwriters, in August 2009, they were six months too late.

Plaintiffs try to obscure this simple fact by invoking the two-step approach to Section 10(b) limitations issues embraced by the Ninth Circuit in *Betz*. Under that analysis, a court first determines when a plaintiff was on inquiry notice of his or her claim, and then determines how long an investor using reasonable diligence would have needed to complete an investigation resulting in the discovery of the facts constituting the alleged violation. *Betz*, 519 F.3d at 876. It is far from clear whether this two-step analysis ever properly governed Section 11 or 12(a)(2)

---

[4] For the Court's convenience, we quote these rather lengthy allegations in the attached Appendix.

[5] See attached Appendix.

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS                    6
C-09-03268-PJH

\\\035984/000001 - 42448 v8

1  claims. What *is* clear, however, is that after *Merck*, the two-step analysis does not apply in a case
2  like this one. *Merck* holds that the controlling question for limitations purposes is simply when a
3  plaintiff discovered or should have discovered certain facts giving rise to his or her claim. 2010
4  WL 1655827, at *13. The concept of inquiry notice may in some instances be useful in
5  determining when that discovery should have occurred. *Id.* at *15. But inquiry notice is neither
6  necessary nor sufficient to trigger the limitations period. *Id.* The ultimate question is when
7  plaintiff discovered or should have discovered the relevant facts. Here, plaintiffs have dispensed
8  with the need for inquiry notice as an analytical tool by stating quite straightforwardly that
9  investors actually learned those facts in February 2008. That is the beginning and end of the
10 matter.[6]

**2. Bare Escentuals Did Not Make "Reassuring" Statements Sufficient To Dissipate Investors' Discovery Of The Relevant Facts.**

13      Plaintiffs attempt to avoid this result by arguing that the company dissipated the effect of
14 investors' discovery when it made "reassuring" statements about the Costco and Target sales.
15 According to plaintiffs, during the same February 2008 conference call in which the company
16 informed the market of the sales, management "vigorously reassured" investors that the company
17 was "actively working to stop [the sales]." Opp. at 21. Plaintiffs quote their own complaint,
18 where they allege that the company "falsely assur[ed] the investment community that the
19 'unauthorized' Target and Costco sales *would be stopped*." *Id.* (emphasis added); Com. ¶14.

---

[6] Because inquiry notice was an important part of the Ninth Circuit's analysis of limitations issues before *Merck*, the underwriters focused on that concept in their opening brief. In light of *Merck*'s simplified approach and plaintiffs' acknowledgement that investors learned about sales by discounters from the February 2008 earnings call, it is no longer necessary to determine the point at which a duty to inquire arose. Discovery itself occurred in February 2008.

It is worth noting that even before *Merck* was decided, courts applying *Betz*'s two-step framework to Section 10(b) claims recognized that in some situations, the two steps collapse into one. *See, e.g., In re American Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1104 (C.D. Cal. 2008) (*Betz*'s second "investigation" second step does not aid plaintiffs where "[t]here is no good reason given, nor could one be concocted, for delaying the filing of the [complaint] for more than a year after [the event constituting inquiry notice occurred]"); *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009) (given the nature of the alleged fraud and the company's disclosure, *Betz*'s two steps "merge"). If the present case had been governed by the two-part framework, the two steps would "merge" here too. The same facts that provide inquiry notice also gave rise to the relevant discovery that purportedly untrue statements were made; plaintiffs, moreover, have provided no reason for their 18-month delay following the February 2008 disclosure.

This argument cannot save plaintiffs' untimely claims. Even by plaintiffs' account, Bare Escentuals never denied that the sales had occurred. Plaintiffs' theory is that the sales harmed the company's "premium image" and put it in breach of its contract with QVC, thereby rendering the company's statements on those subjects false. A promise by the company to stop the sales would not change the fact that the sales had been made – and it is this fact that plaintiffs contend made the challenged statements untrue. Nothing the company said dissipated investors' discovery of that historical fact.

As significantly, and contrary to plaintiffs' mischaracterization, the company did *not* say that the sales "would be stopped." The totality of "reassuring" statements made during the February 2008 conference call is this:

> [W]e have seen unauthorized Bare Escentuals products appear in both Costco and Target stores. To be clear, Bare Escentuals does not have a business relationship with either retailer and, as such, we are aggressively pursuing our legal rights with respect to the sale of Bare Escentuals products through unauthorized channels.
>
> At the same time, we are taking proactive steps to develop methods to better track our products through the supply chain and prevent future occurrences.

Com. ¶ 189 (quoting passage in full). Bare Escentuals made no "assurances" that the sales "would be stopped." The company, speaking through its CEO, stated only that it was "pursuing [its] legal rights." It did not claim to have the right to stop the sales and it certainly provided no assurance that a court would rule in its favor. Bare Escentuals, like any prudent company, made no promises about the outcome of litigation in which it was involved.

The law is clear that statements such as those made here cannot excuse plaintiffs' failure to comply with limitations periods. When a company makes purportedly reassuring statements about third-party litigation, plaintiffs in the securities action will not be excused from compliance with limitations periods merely because the company, in speaking to investors, defends its position in the other litigation. Thus, even in cases where the company *denies* the allegations made by its adversary in third-party litigation, the company's statements do not stop the limitations period from running.[7] Far less do statements expressing optimism about the outcome

---

[7] *Great Rivers Co-op v. Farmland Indus., Inc.*, 120 F.3d 893, 898 (8th Cir. 1997) (company

of a lawsuit or investigation suspend the limitations period. *GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund*, 580 F. Supp. 2d 321, 332 (S.D.N.Y. 2008) (collecting authorities).

In this case, Bare Escentuals did not even express optimism, much less make assurances about its lawsuit with Costco. It stated only that it had unspecified legal rights and that it was aggressively pursuing them. The company did not claim that it would prevail in litigation or that the sales would stop. Plaintiffs' argument is based on a mischaracterization of the record, coupled with a misreading of the law. Nothing the company said dissipated investors' acknowledged discovery of the relevant facts in February 2008.[8]

### 3. Plaintiffs' Loss Causation Allegations Confirm Discovery Of The Relevant Facts In 2007 And 2008.

As the underwriters previously argued, plaintiffs' own loss causation allegations demonstrate that plaintiffs discovered or should have discovered the alleged untruthfulness of the challenged statements more than one year before they commenced this action. UW Mot. at 14-15. Plaintiffs cannot escape these allegations. They have asserted that on five occasions before August 2008, the "true nature and extent" of the alleged wrongdoing was "finally revealed to the market." *Id.* (quoting plaintiffs' allegations). To say that fraud has been revealed and yet at the same time that an investor could not have discovered that untrue statements have been made is to pose a conundrum that has no solution. Plaintiffs cannot reconcile their causation allegations with their limitations argument.

---

describes allegations made by adversary in third-party litigation as "ridiculous" and "ludicrous"; limitations period not suspended); *see also, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 433 (S.D.N.Y. 2003) (limitations period not suspended where defendant denies charges of wrongdoing made by the media and regulators).

[8] The Ninth Circuit's discussion of "reassuring" statements in *Betz* arose in an entirely different context and does not remotely compel a different result. The *Betz* court held that the limitations period for a Section 10(b) claim did not begin to run where plaintiff expressed concerns about her investment in face-to-face meetings with the defendant brokerage and its employees, and where defendants assured plaintiff that the president of the company had been alerted to her situation and would "take care of" her account because it was "the right thing to do." 519 F.3d at 878. Here, by contrast, plaintiffs never raised concerns and were never told that they would be protected from a loss in the value of their investments.

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS           9
C-09-03268-PJH

\\\035984/000001 - 42448 v8

Plaintiffs nevertheless try, albeit in an indirect way.  First, they argue that until October 30, 2008, the market did not become "***painfully*** aware" of the relevant facts.  UW Opp. at 20 (emphasis in original).  But "painful" awareness is obviously not the governing standard.  Discovery of purportedly untrue statements is the standard, and that occurred, at the latest, in February 2008.

Significantly, plaintiffs do not point to any new information germane to their claims against the underwriters that became available in October 2008.  The company's October 2008 disclosures related to lower-than-expected revenues and earnings for the quarter just ended, and to reduced guidance and new pricing and sales strategies going forward.  There was no revelation that statements made in offering documents in September 2006 and March 2007 were untrue.  The significance of October 30 for plaintiffs is that it falls conveniently within the one-year limitations period – not that any discovery relevant to the Securities Act claims took place then.

Plaintiffs also rely on the fact that Bare Escentuals' stock price did not fall after the disclosures in February 2008.  Plaintiffs argue that it is "preposterous" to suppose that they could have discovered wrongdoing in the absence of a stock price drop.  UW Opp. at 22 (quoting and citing *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1159 (C.D. Cal. 2008)).  But on this level, discovery and loss causation are distinct.  The fact that Bare Escentuals' stock price did not drop after the disclosure of the Target and Costco sales may well be important if this case advances.  Plaintiffs can be expected to face significant difficulty establishing loss causation in the face of the market's indifference to the February disclosure.  The question for limitations purposes, however, is not when the market discovered information that *caused it to devalue the company's stock*.  The question for limitations purposes is when investors discovered the facts that purportedly *render the challenged statements untrue*.  That is the relevant inquiry here by statutory mandate:  Plaintiffs must bring suit within one year of "the discovery of the untrue statement or the omission" – or, of course, within one year of the time "such discovery should have been made by the exercise of reasonable diligence."  Here, discovery should have been made at the latest in February 2008, when, by plaintiffs' own admission, investors learned the very facts that plaintiffs contend show the challenged statements were false.  The statute ran one

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS                    10
C-09-03268-PJH

\\\035984/000001 - 42448 v8

1  year later, in February 2009.[9]

### 4. Plaintiffs Do Not Seriously Defend The Timeliness Of Their Claims With Respect To Their "Club Deals" And Leftover Theories.

Much as with the Costco sales, the very facts plaintiffs rely on to allege falsity with respect to "club deals" were available in the first half of 2008. UW Mot. at 13. Plaintiffs do not address this point, save to remark that the market "did not become *painfully* aware" of the club deals until October 30, 2008. Opp. at 20 (emphasis in original). Again, "painful" awareness is not the standard here; access to the facts underlying plaintiffs' assertions of untruth is. Plaintiffs do not deny that those facts were available in early 2008. Nor, significantly, do plaintiffs point to any new information – or, indeed, any information at all – about "club deals" that was revealed on October 30, 2008. The only apparent significance of October 30, 2008, again, is that it falls within one year of plaintiffs' commencement of this action. It is nothing more than wishful thinking to claim, as plaintiffs do, that this was the date on which they made some relevant discovery about "club deals."

The same is true of plaintiffs' leftover allegations, addressed at pages 14-15 of the underwriters' opening brief. In these allegations, plaintiffs contend generally that Bare Escentuals was losing control over its distribution channels and that various representations in the prospectus and registration statement were inconsistent with that fact and therefore untrue. But plaintiffs do not point to new information relevant to this claim that became available in October

---

[9] Both factually and analytically, the *Countrywide* case on which plaintiffs rely is worlds away from the situation here. The alleged fraud in *Countrywide* concerned the company's mortgage-related operations and mortgage securitizations – "complex financial transactions that were relatively difficult to value." 588 F. Supp. 2d at 1159. Plaintiffs in *Countrywide* alleged, supported by the Congressional testimony of third-party rating agencies, that the market's valuation of the company's business was based on unsound analyses. *Id.* The complaint thus "plausibly allege[d]" that "the market was fooled." *Id.* On that basis, the *Countrywide* court concluded that defendants had not established that investors were on notice of the alleged wrongdoing.

The present case is very different. Plaintiffs here do not and cannot plausibly allege that the market was fooled with respect to the February 2008 disclosures concerning the Target and Costco sales. The market was explicitly told the relevant facts: Target and Costco were selling Bare's products. Plaintiffs' difficulty here is not that the market was deceived about those facts. Plaintiffs' difficulty is that the market appears not to have cared about them – as shown by the fact that the company's stock price did not drop.

2008. Nor can plaintiffs walk away from their causation allegations, in which they take the position that fraud at the company was "revealed" on five occasions *before* October 30, 2008, each one more than a year before plaintiffs sued the underwriters.[10] Finally, the Costco sales demonstrated that the company had less than complete control over the distribution of its products; information concerning those sales, according to plaintiffs' theory, thus showed that the challenged statements were untrue. Because plaintiffs waited more than one year after that information was publicized before commencing this action, their claims are untimely.

## III.   CONCLUSION

Plaintiffs admit, as they must, that the market learned in February 2008 that Costco and Target were selling Bare Escentuals' products. Because this is the very fact that plaintiffs contend made the challenged statements untrue, Section 13's one-year period began to run at that time. The company made no contemporaneous or subsequent "reassuring" statements that might excuse plaintiffs' inaction. Nor can that inaction be justified by the fact that the market did not react adversely to news of sales by discounters. The question for limitations purposes is not when (or whether) loss occurred, but when investors learned the facts that, according to plaintiffs, render the challenged statements untrue. That occurred here in February 2008, and the one-year limitations period expired in February 2009 – six months before plaintiffs sued the underwriters. Plaintiffs' claims are time-barred and should be dismissed.

---

[10] These allegations provide an additional reason to reject plaintiffs' argument that the absence of a stock price decline after the February 26, 2008 disclosure is relevant to the issue of discovery. Whatever the significance of the company's stock price performance on that date, plaintiffs themselves allege that on five other occasions, the stock price *did* drop in response to the supposed revelation of wrongdoing at the company.

Dated: June 4, 2010

HOGAN LOVELLS US LLP

By: */s/ Norman J. Blears*
    Norman J. Blears

*Attorneys for Defendants*
Goldman, Sachs & Co., CIBC World Markets, Banc of America Securities LLC, Piper Jaffray Companies, Thomas Weisel Partners LLC, and Suntrust Robinson Humphrey, Inc.

UNDERWRITERS' REPLY IN SUPPORT
OF MOTION TO DISMISS       13
C-09-03268-PJH

\\\035984/000001 - 42448 v8

1  **APPENDIX OF ALLEGATIONS IN PLAINTIFFS' COMPLAINT**

**From Paragraph 11**

"Though Bare Escentuals repeatedly touted in the IPO Registration Statement/Prospectus and thereafter that its sales model and its 'multi-channel distribution strategy provide[d] for greater consumer diversity, reach and convenience *while reinforcing the authenticity and premium image of t[the company's] brands*,' Defendants concealed, *at the time of the IPO*, that Bare Escentuals product the Company had itself put into the chain of commerce through distributors was being prepared for resale at bit box discounters Costco and Target . . . ." (Emphasis and square brackets in original.)

**Paragraph 63**

"The IPO Registration Statement/Prospectus also characterized the Company's sales program as '[m]utually reinforcing distribution channels,' and stated that its 'multi-channel distribution strategy provide[d] for greater consumer diversity, reach and convenience, while reinforcing the authenticity and premium image of [the Company's] brands.'  However, in reality, the Company was selling its products to foreign distributors by the time of the IPO that had begun reselling Bare Escentuals product fo mass discounters like Costco and Target, significantly undermining the Company's reputation as a 'premium' product seller and stymieing Defendants' efforts to continue demanding the premium prices Bare Escentuals had previously been able to charge."  (Emphasis and square brackets in original.)

**From Paragraph 67**

"[A]t the time of its IPO in September 2006, Bare Escentuals was not in compliance with the spirit, much less the word of its agreement with QVC that the SEC had required the Company to file as an attachment to its IPO Registration Statement.  Instead, it was selling to distributors who were in turn redistributing to discounters like Costco and Target.  Moreover, the Company simply had no legal ability to stop discounters from selling its product once it was legally

obtained."

**From Paragraph 75**

"Concerning the Company's 'Growth Strategy,' the March 2007 Registration Statement/Prospectus again stated that Bare Escentuals intended to 'continue to increase net sales through key *premium wholesale accounts, such as Sephora and Ulta, home shopping television, and spas and salons*.' However, Costco and other discounters Bare Escentuals' distributors were selling to, unbeknownst to investors, were not 'premium wholesale accounts.'" (Emphasis in original.)