SCOTT+SCOTT LLP
ARTHUR L. SHINGLER III (181719)
MARY K. BLASY (211262)
HAL D. CUNNINGHAM (243048)
600 B Street, Suite 1500
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)
ashingler@scott-scott.com
mblasy@scott-scott.com
hcunningham@scott-scott.com

 – and –

DAVID R. SCOTT (*pro hac vice*)
ERIN G. COMITE (*pro hac vice*)
P.O. Box 192
156 South Main Street
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)
drscott@scott-scott.com
ecomite@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE BARE ESCENTUALS, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>All Actions | Master File No. C-09-03268-PJH<br><br>LEAD PLAINTIFFS' STATEMENT OF RECENT DECISIONS AND RESPONSE TO DEFENDANTS' STATEMENT OF RECENT DECISION<br><br>Date:     July 21, 2010<br>Time:    9:00 a.m.<br>Dept:    Courtroom 3<br><br>Hon. Judge Phyllis J. Hamilton |

Pursuant to Civil L.R. 7-3(d), Lead Plaintiffs Victor J. Takas and Westmoreland County Retirement System respectfully submit the following three recent Ninth Circuit Court of Appeals decisions and single Second Circuit Court of Appeals decision and respond to the Bare Defendants' submission of an additional recent Ninth Circuit decision.

**A.** ***Betz v. Trainer Wortham & Co. Inc.*:**
**the Effect of the Supreme Court's Decision in *Merck* on the Ninth Circuit's Statute of Limitations Jurisprudence**

On February 26, 2008, the Ninth Circuit Court of Appeals adopted a two-prong inquiry "notice-plus-reasonable-diligence" test for resolving statute of limitation defenses in federal securities actions in *Betz v. Trainer Wortham & Co., Inc.*, 519 F.3d 863 (9th Cir. 2008), noting that as to the first prong, "[t]he question of whether inquiry notice exists is ***objective*** and contemplates a 'reasonable investor' or 'reasonable person' standard," while holding that "the second stage of that inquiry, the question of whether the plaintiff exercised reasonable diligence in investigating the facts underlying the alleged fraud, while remaining essentially objective in character, ***necessarily entail[ed] an assessment of the … plaintiff's particular circumstances*** from the perspective of a reasonable investor." *Id.* at 877 ("under the notice-plus-reasonable-diligence standard we apply to securities fraud claims, the defendant bears a considerable burden in demonstrating, at the summary judgment stage, that the plaintiff's claim is time barred," and "'[s]ummary judgment is appropriate only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct.'"). *Id.*[1] Notably, the *Betz* court emphasized that defendants' statements that the problems identified by plaintiff would be taken care of could have lulled a reasonable investor into inaction, thus tolling the commencement of the statute of limitations. *Id.* (reversing summary judgment after the completion of discovery and holding "a jury must determine whether a reasonable investor would have discovered the fraud while receiving active assurances from the highest levels of the securities firm that there was no problem with her account and all would be made right"). *Id.* at 879.

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

On April 21, 2010, the U.S. Supreme Court expressly rejected any subjective determination of whether a particular plaintiff's efforts to discover "the facts constituting the violation" in favor of an ***entirely objective*** standard that does not commence until "a reasonably diligent plaintiff" would have discovered the facts constituting the violation **"– *irrespective of whether the actual plaintiff undertook a reasonably diligent investigation*** ." *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784, 1798 (2010).

Lead Plaintiffs cited *Betz* and *Merck* in their oppositions to defendants' motions to dismiss, arguing, among other things, that the Complaint's allegations that Blodgett's false reassurances to the investment community falsely implying that Bare Escentuals had legal rights to stop the "unauthorized" sales and was exercising those rights, coupled with the lack of immediate stock price reaction, negated any duty to investigate that otherwise could have arisen based on defendants' Spring 2008 disclosures. *See* Dkts. No. 69, at 19-23, and 68 at fn. 5.  On May 3, 2010, the U.S. Supreme Court reversed and remanded *Betz* "for further consideration in light of" its decision in *Merck*.[2] *Trainer Wortham & Co., Inc. v. Betz*, 130 S.Ct. 2400 (2010). On July 10, 2010, the Ninth Circuit Court of Appeals remanded *Betz* to the district court to resolve "contested issues of fact as relevant **under the standard set by *Merck*,"** including, if necessary, reopening discovery. *Betz v. Trainer Wortham & Co., Inc.*, No. 05-15704, 2010 WL 2674442, at *1-*3 (9th Cir. July 7, 2010).  *See* Exhibit A hereto.

> **B.**   ***Policemen's Annuity Fund of Chicago v. Apollo Group, Inc.*:**
> **that Which Constitutes a "Corrective Disclosure" Presents a Contested Issue of Fact**

On August 4, 2008, a federal district court in Arizona granted a post-trial motion for judgment as a matter of law reversing a $277.5 million-plaintiffs' verdict in a securities class

---

[2] In their post-*Merck* Reply in Support of Motion to Dismiss, the Underwriter Defendants now argue that the Court's "analysis is unaffected by the rule announced" in *Merck*, limiting *Merck* to "the rule that the limitations period for **Section 10(b) claims** does not run until plaintiffs have discovered defendants acted with scienter." *See* Dkt. No. 75 at 1.  Yet in *Merck,* the Supreme Court expressly held its decision applies **both** to determining when the discovery of "facts constituting the violation" occurred and, **separately,** that "the 'facts constituting the violation'" of §10(b) of the Securities Exchange Act of 1934 "include the fact of scienter." *Merck*, 130 S.Ct. at 1790-91.  Falsity is obviously also a fact "constituting the violation" of both Securities Exchange Act of 1934 and Securities Act of 1933 violations.

1  action, ruling loss causation was negated as a matter of law because the company's stock price
2  fell on publication of an analyst's report examining the implications of a Department of
3  Education ("DOE") investigation five days after news of the DOE investigation became public,
4  rather than on the earlier public disclosure of the DOE investigation by several major
5  newspapers.  *See In re Apollo Group, Inc. Sec. Litig.*, No. CV-04-2147, 2008 WL 3072731, at *3
6  (D.Ariz. Aug. 4, 2008).  The *Apollo* district court held that "even accepting the premise that
7  analysis of existing facts may sometimes be necessary to reveal a fraud to the market, the
8  [analyst's] reports were not necessary to reveal the fraud in this case because they did not
9  provide any new, fraud-revealing analysis." *Id.*, at *3.  Notably, the court expressly rejected the
10 jury's finding that the analysts' "reports were corrective because it was 'obvious from the
11 report[s]' that [the analyst] had 'read the [DOE] report,'" holding "this, of course, is nonsense.
12 What [the analyst] did or did not read before issuing her reports is irrelevant." *Id.*, at *4.
13    On June 23, 2010, a three-judge panel of the Ninth Circuit reversed the district court's
14 judgment as a matter of law ruling the "jury could have reasonably found that the UBS reports
15 following various newspaper articles were 'corrective disclosures' providing additional or more
16 authoritative fraud-related information that deflated the stock price."  *See Policemen's Annuity*
17 *and Benefit Fund of Chicago v. Apollo Group, Inc.*, No. 08-16971, Memorandum (9th Cir. June
18 23, 2010) attached hereto marked Exhibit B, at 1.  In so holding, the Ninth Circuit relied on two
19 of its prior decisions holding that which constitutes a corrective disclosure presents a contested
20 issue of fact. *Id.* (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008) (later
21 disclosure corrective when public initially "failed to appreciate [the] significance" of negative
22 information); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 503 (9th Cir. 1992) (what market
23 understands depends on "intensity and credibility" of information).
24    The *Apollo* holding negates the Underwriter Defendants' attempt in their Reply in Support of
25 Motion to Dismiss to first dramatically narrow that which Lead Plaintiffs alleged was false and
26 misleading in the offering memoranda concerning the sales at Target and Costco (*i.e.*, ignoring
27 Lead Plaintiffs' allegations that Bare misstated the exclusively of its sales through "premium
28

1  sales channels," concealed that it was cannibalizing premium-price sales by selling through
2  mass-discount channels, misstated later that Bare was stopping the "unauthorized" sales through
3  mass discount channels, and concealed the deleterious effect those discount channel sales were
4  having on Bare's premium channel sales) and then to claim this Court can find *as a matter of*
5  *law* that Bare's investors were not reasonably entitled to believe Leslie Blodgett's claims that
6  Bare was "aggressively pursuing the issue," to "expect the issue to be resolved in the next
7  quarter or two," or to "believe it w[ould] have a minimal long term impact on Bare's operations."
8  *Cf* Dkt. No. 75 at 7-11 and Complaint, ¶¶ 157-159, 163-165, 167-169, 176(e), 187-194.

### C. *Sharenow v. Impac Mortgage Holdings, Inc.*: Standards of Review to Be Applied in Securities Class Actions

On June 7, 2010, the Ninth Circuit Court of Appeals decided *Sharenow v. Impac Mortgage Holdings, Inc.*, No. 09-55533, 2010 WL 2640195 (9th Cir. June 29, 2010) which affirms dismissal of a securities class action, yet expressly confirms that: (i) class period sales by insiders are "heavily" probative of scienter, especially where class period omissions are alleged; (ii) courts in the Ninth Circuit must conduct a holistic review of all of a securities class action complaint allegations to determine whether a strong inference of scienter has been pled; and (iii) expressly confirms that courts are to consider "core operations inferences" when conducting their holistic review. *Id.*, at *1-*2.[3]  A copy of *Impac* is attached hereto marked Exhibit C.

Of note in *Impac,* the Ninth Circuit ordered the parties to submit post-argument briefing on the issue of whether it was proper for the district court to take judicial notice of "the recent mortgage-industry downturn," using materials outside the complaint "under Federal Rule of Evidence 201." *Id.*, fn.1.  As is the case here, in *Impac* the parties disputed which "inferences from the downturn [could] properly be applied to the scienter analysis," with "defendants urg[ing] that the downturn g[ave] an explanation for what occurred that [wa]s exculpatory." *Id.* The *Impac* court declined to "resolve the issue whether judicial notice should here be taken on

---

[3]  To be sure, the scienter analysis is only relevant to Lead Plaintiff's Securities Exchange Act of 1934 claims.

the economic downturn or any causes of it," holding it was not necessary to determine whether a strong inference of scienter had been pled. *Id.*

### D. *In re Cutera Securities Litigation*: Delineating Safe Harbor Jurisprudence

On July 12, 2010, the Bare Escentuals defendants submitted *In re Cutera Sec. Litig.*, No. 08-17627, 2010 WL 2595281 (9th Cir. June 30, 2010) (*see* Dkt. No. 80 and attachment thereto), arguing *Cutera* holds that a defendant's state of mind is irrelevant in adjudicating their Safe Harbor defense arising under the Private Securities Litigation Reform Act.[4] They are wrong. First, *Cutera* expressly confirms that the Court need not even address a Safe Harbor defense unless and until it determines as a matter of law the statements at issue were "forward-looking," which cannot be done here. *Cf. id.*, at *6 and Dkt. No. 68 at 29-30 ("The statements Defendants attack are not forward-looking" and/or represent "mix representations of historical and present facts."). More importantly, *Cutera* clearly and expressly recognizes that even forward-looking false statements are cognizable if, as here, they were either (a) ***not sufficiently identified as forward-looking statements*** <u>***and***</u> ***accompanied by meaningful cautionary language***, or (b) where investor-plaintiffs allege defendants issued "unidentified forward-looking statements" or forward-looking statements not unaccompanied by meaningful cautionary language – ***with actual knowledge of those statements' falsity***. 2010 WL 2595281, at *6. To be sure, none of the Bare defendants seriously contest actual knowledge of falsity here – they cannot.

As the Securities and Exchange Commission's *amicus curiae* brief submitted with Lead Plaintiffs' Opposition to Motion to Dismiss at Ex. D counseled, and as the Second Circuit Court of Appeals recently held on May 18, 2010 examining and applying that SEC *amicus* along with the legislative history of the Private Securities Litigation Reform Act of 1995, a defendant's actual knowledge of falsity is indeed relevant in determining whether that defendant's purported "cautionary statements" were "meaningful" or instead "boilerplate," as actual knowledge of falsity guides a court in determining that which the defendant could have warned of, but did not.

---

[4] Like the scienter analysis, the Safe Harbor defense only applies to Lead Plaintiffs' Securities Exchange Act of 1934 claims.

1 | *Slayton v. Am. Express Co.*, 604 F.3d 758, 768-73 (2nd Cir. 2010) (holding "defendants … carry
2 | the burden of demonstrating that they are protected by the meaningful cautionary language prong
3 | of the safe harbor, and they have not argued that the other factors they identified were important
4 | factors that could realistically cause results to differ materially. Absent such argument, we have
5 | no way of knowing if they were. Accordingly, we conclude that the defendants have failed to
6 | demonstrate that the May 15 statement is protected by the cautionary meaningful language prong
7 | of the statutory safe harbor").  The Second Circuit's *American Express* decision is attached
8 | hereto marked Exhibit D.

Dated:  July 13, 2010

Respectfully submitted,
SCOTT+SCOTT LLP

/s/ Mary Blasy
MARY BLASY
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
mblasy@scott-scott.com

SCOTT+SCOTT LLP
David R. Scott (*pro hac vice*)
Erin G. Comite (*pro hac vice*)
P.O. Box 192
156 South Main Street
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
drscott@scott-scott.com
ecomite@scott-scott.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 13, 2010.

/s/ Mary Blasy
MARY BLASY
SCOTT+SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
mblasy@scott-scott.com